**Nancy ESLINGER, Plaintiff,**

v.

**U.S. CENTRAL CREDIT UNION, Defendant.**

**No. 93–2406–JWL.**

United States District Court, D. Kansas.

Oct. 5, 1994.

Stephen J. Dennis, Kenneth R. Battis, Dennis & Battis, P.A., Fairway, KS, for plaintiff Nancy Eslinger.

W. Perry Brandt, Tammy L. Womack, Stinson, Mag & Fizzell, John M. Lilla, Lindsay K. McFerrin, Brian A. Snyder, Jackson, Lilla & McFerrin, P.C., Kansas City, MO, Thomas F. Sullivan, Lenexa, KS, for defendant U.S. Cent. Credit Union.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Nancy Eslinger, plaintiff, contends that her employer, U.S. Central Credit Union ("U.S. Central"), discriminated against her on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.A § 2000e *et seq.* (West 1981 & Supp. 1994). Defendant denies that plaintiff's termination of employment with U.S. Central constitutes unlawful discrimination and has moved for summary judgment of plaintiff's claim (Doc. # 56). For the reasons set forth fully below, although an exceeding close case, defendant's motion is denied.

### Facts

The following facts are uncontroverted or are those facts considered in the light most favorable to plaintiff for purposes of this summary judgment motion.[1]

Plaintiff began her employment at U.S. Central in 1982 as a Corporate Account Representative, an entry level position for which she was compensated $15,000 per year. Over a ten year period, she advanced up the "corporate ladder" holding the positions of Corporate Account Representative, Product Manager, Assistant Vice President of Payment Systems, Assistant Vice President of Securities and Assistant Vice President of Settlement Services, receiving incremental increases in her salary along the way. She was terminated in 1992, at which time she held the position of Vice President of Settlement Services and General Services and received compensation in the amount of $74,000 per year.

From the time of plaintiff's employment in 1982 to her termination in January of 1993, U.S. Central grew substantially. New functions and areas of responsibility were contin-

---

1. Defendant argues that plaintiff has failed to comply fully with D.Kan.R. 206 and that certain facts should be deemed admitted by plaintiff on this basis. The court finds, however, that plaintiff has sufficiently complied with the rule and that the court can determine from the papers submitted which facts are genuinely controverted for purposes of this motion.

ually being developed. By the late 1980's, as a result of the company's substantial growth, there was a clear sense that the management of U.S. Central needed reorganization and restructuring. In July of 1991, U.S. Central hired Mr. James Bell as its new President, charged with the task of making "whatever changes were necessary" in the existing management structure in order to improve operational efficiency.

Shortly after his arrival, Mr. Bell met one on one with plaintiff, and while discussing an employee who was then on maternity leave, commented to plaintiff that, "you can't trust pregnant women, especially those with their second child because you never know if they are going to come back or not." Plaintiff reported this comment to Deb Vanderwerf, the company's personnel manager, immediately after the meeting. Although she did not know it at the time, plaintiff was then pregnant with her second child. In August of 1991, Mr. Bell told Kelly Shelquist, an employee supervised by plaintiff, when she returned from maternity leave that, in his opinion, women were better workers "until they have kids."

Mr. Bell engaged in an immediate reshuffling and reorganization at U.S. Central. A number of officers lost their jobs in the latter months of 1991, including two male vice presidents and one male assistant vice president. There was a second wave of changes in 1992, one significant result of which was the elimination of the position of general manager. At the time of the elimination of the general manager position, March of 1992, plaintiff was promoted to a full vice president position.

The decision to promote plaintiff was made by Mr. Bell, the same person who terminated her position nine months later. At the time he promoted plaintiff, Mr. Bell was aware that plaintiff was roughly eight months pregnant with her second child.

Plaintiff gave birth to her second child in April of 1992. After she returned from maternity leave, she had some family problems concerning her children and, in the Fall of 1992, took some additional time off from work. Upon her return, she had a conversation with Mr. Bell concerning the subject of motherhood, which plaintiff characterizes as a "lecture" on motherhood, and was told that she "could always come back in the work force later on." About this same time, Mr. Bell considered the elimination of plaintiff's position.

On January 7, 1993, plaintiff's position of Vice President of Settlement Services and General Services was eliminated and her responsibilities redistributed to officers in other departments. Plaintiff was not offered another or lower position with the company. Mr. Bell testified that her termination was not performance related. Defendant contends that the results of a study of U.S. Central's work flows and operational efficiencies by the outside consulting firm of Deloitte & Touche, in conjunction with the business judgment of President Bell, formed the basis for the decision to eliminate plaintiff's position. Mr. Bell allegedly determined that several of plaintiff's responsibilities more appropriately fell under different departments at U.S. Central. It is defendant's contention that plaintiff's termination was motivated solely by the need to improve corporate efficiency.

Following the elimination of her position, plaintiff's duties were parceled to other male employees, namely three senior vice presidents in charge of the data processing department, the administration department and the treasury department.

Of the ten officers let go by U.S. Central during plaintiff's tenure, nine were men, plaintiff being the only female officer terminated. Plaintiff was, however, the only female to hold a vice-president position and one of only a handful of females to hold an assistant vice-president position at U.S. Central. Since plaintiff's termination, defendant has added employees to its payroll "fairly steadily."

Plaintiff contends that the defendant did not eliminate her position and terminate her employment solely in an effort to maximize efficiency. Instead, plaintiff argues that her gender played a role in defendant's decision to terminate her employment and eliminate her position.

## Legal Standard

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. *Langely v. Adams County, Colorado,* 987 F.2d 1473, 1476 (10th Cir. 1993). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anthony v. United States,* 987 F.2d 670, 672 (10th Cir.1993). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511, *Tersiner v. Union Pacific R.R.,* 740 F.Supp. 1519, 1522–23 (D.Kan. 1990). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

## Discussion

Defendant contends that even if plaintiff is given all the reasonable inferences to which she is entitled from the facts before the court, she cannot meet her burden to show a genuine issue of fact exists whether U.S. Central had an unlawful discriminatory motive or intent in terminating her employment. Defendant contends that under the shifting burden of proof scheme established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and refined in *Texas Dep't of Community Affairs*

*v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1973), plaintiff fails to prove a prima facie case of gender discrimination and, further, that plaintiff has not met her burden to present evidence that U.S. Central's articulated reasons for her termination are a pretext for unlawful gender discrimination.

■ Plaintiff first responds that the *McDonnell Douglas* framework is inapplicable here because plaintiff has produced direct evidence of discriminatory intent. *See Furr v. AT & T Technologies, Inc.,* 824 F.2d 1537, 1549 (10th Cir.1987)· (shifting allocation of burdens of proof not necessary where direct evidence of discrimination exists). Plaintiff contends that Mr. Bell's comments regarding pregnant women and/or women with children, evidence a bias against females in the workplace, and, thus, constitute direct, as opposed to circumstantial, evidence of discrimination. The court disagrees. Mr. Bell's alleged comments are not direct evidence of discriminatory intent, but rather are circumstantial evidence from which a trier of fact may infer discriminatory intent.

■ To constitute direct evidence, plaintiff's proof must "speak directly to the issue of discriminatory intent" and "must also relate to the specific employment decision in question." *Swanson v. Allied Signal, Inc.,* No. 91–2155–JWL, 1992 WL 223768, *2 (D.Kan. Aug. 13, 1992) (quoting *Randle v. LaSalle Telecommunications, Inc.,* 876 F.2d 563, 569 (7th Cir.1989)). While Mr. Bell's alleged statements may be considered as some evidence of discriminatory intent, plaintiff has not shown that his alleged personal bias relates specifically to the decision to terminate plaintiff's employment such that the statements may be deemed direct evidence of discrimination.

The Tenth Circuit has found, in analogous circumstances, that evidence of personal bias on the part of an individual involved in the making of the employment decision is not direct evidence of discrimination. *See Ramsey v. City and County of Denver,* 907 F.2d 1004, 1008 (10th Cir.1990), *cert. denied,* —— U.S. ——, 113 S.Ct. 302, 121 L.Ed.2d 225 (1992). In *Ramsey,* there was evidence that

one of the plaintiff's supervisors made comments indicating that he believed that certain jobs were more suitable for women than others. *Id.* The plaintiff argued that such testimony was direct evidence of discrimination, and, thus, that the *McDonnell Douglas* test was inapplicable. The court found that for such evidence to constitute direct evidence of discriminatory conduct, it would need to show, not simply personal bias, but that the employer acted on his or her discriminatory beliefs. *Id.* The court reasoned that the comments, standing alone, did not indicate that the employer defendant acted on his discriminatory beliefs. *Id.*

Thus, the statements were not direct evidence, but rather were circumstantial evidence, "proof of certain facts and circumstances ... from which a jury may, under certain conditions, infer other connecting facts which usually and reasonably follow according to the common experiences of mankind." *Id.* (citing *Wilkins v. Hogan,* 425 F.2d 1022, 1025 n. 1 (10th Cir.1970) and *Price Waterhouse v. Hopkins,* 490 U.S. 228, 251, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268 (1989) ("Remarks at work that are based on sex stereotypes do not inevitably prove that gender played a part in a particular employment decision. The plaintiff must show that the employer actually relied on her gender in making its decision. In making this showing, stereotyped remarks can certainly be evidence that gender played a part."))

Similar to the evidence presented in *Ramsey,* the alleged statements of Mr. Bell indicate a personal bias, but do not mandate the conclusion that he acted on such beliefs. Thus, they constitute circumstantial and indirect evidence from which a jury may, if it credits such evidence, infer that gender played a part in the employment decision. Accordingly, the *McDonnell Douglas* framework applies to the circumstances of this case and the court will utilize its shifting burden of proof scheme here.

■ Plaintiff must carry the initial burden to prove a prima facie case of intentional discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824). To do so, a plaintiff must show that: (1) she was a member of a protected group; (2) she was quali-

fied; (3) she was terminated despite her qualifications; and (4) after her termination, the position remained open to or was awarded to someone outside the protected class with similar qualifications. *See Cooper v. Cobe Laboratories, Inc.,* 743 F.Supp. 1422, 1430 (D.Colo.1990) (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824). Once plaintiff proves a prima facie case, the employer must articulate a legitimate, nondiscriminatory reason for its adverse employment decision concerning the plaintiff. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825. A defendant meets this burden by producing "some evidence that it had legitimate, nondiscriminatory reasons for the decision." *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 986, 108 S.Ct. 2777, 2784, 101 L.Ed.2d 827 (1988). Should the defendant meet this burden, it is then incumbent upon plaintiff to show by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for unlawful discrimination. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825.

■ The court finds that plaintiff has met her burden to establish a prima facie case of discrimination. She is a member of a protected group, she was qualified for her position and she was terminated despite her qualifications. The only dispute between the parties surrounds the fourth element, whether plaintiff can show that she was replaced by someone with similar qualifications. The defendant argues that because she cannot show she was replaced or that her position remained open, plaintiff cannot establish a prima facie case. The court finds that because plaintiff has shown that after her termination her duties were assumed by other employees not in the protected group, who possessed similar qualifications, she has met her initial burden in the *McDonnell Douglas* scheme.

The court agrees with plaintiff that her claim does not fail simply because it is impossible to show that her specific position was filled by someone outside the protected class with similar qualifications. In the situation in which a plaintiff's position has been "eliminated" by his or her employer, it has been

held sufficient for purposes of establishing a prima facie case that the plaintiff show that others in the workforce, outside the protected class, took over or assumed the plaintiff's duties. *See Bingman v. Natkin & Co.*, 937 F.2d 553, 556 (10th Cir.1991); *Babich v. Unisys Corp.*, 842 F.Supp. 1343, 1355–56 (D.Kan. 1994). There is evidence in the record that all of plaintiff's responsibilities were assumed by male officers of the company. This evidence may reasonably be considered to give rise to an inference of intent on the part of the defendant to unlawfully discriminate against her such that plaintiff has met her initial burden. In other words, plaintiff has produced some evidence to indicate that gender may have been a motivating factor in the decision to "eliminate" her position as opposed to other vice president positions existing at the time of her termination.

 Turning to the defendant, the court finds that U.S. Central has clearly and specifically articulated a legitimate, non-discriminatory reason for its decision to terminate plaintiff's employment. *See Sorensen v. City of Aurora*, 984 F.2d 349, 352 (10th Cir. 1993) (articulation of reasons must be clear and specific). U.S. Central contends, and has produced evidence indicating, that plaintiff was terminated solely because her position as the Vice President of Settlement Services and General Services was eliminated. There is evidence that Mr. Bell made a considered business judgment to reorganize and restructure the management at U.S. Central and that this restructuring necessarily entailed the elimination of certain vice president positions, including plaintiff's. Thus, defendant has met its burden of production and the presumption of discrimination rising from plaintiff's prima facie case "drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).

 The presumption of discrimination having been rebutted, it is once again incumbent upon plaintiff to show she can support her claim at trial, for the ultimate burden of persuading the trier of fact that the defendant unlawfully discriminated against plaintiff remains at all times with the plaintiff. *Id.* In order to defeat defendant's motion for summary judgment, plaintiff must show that a genuine issue of material fact exists whether U.S. Central's proffered reasons for her termination are a mere pretext for unlawful gender discrimination. Although a close question is presented, the court finds that a genuine issue of material fact exists whether the defendant's proffered explanation is pretextual.

Defendant has contended that the study of Deloitte & Touche impacted, at least in part, the decision to eliminate plaintiff's position. Plaintiff has pointed out, and Mr. Bell admits, however, that nothing in the study amounts to a specific recommendation to eliminate plaintiff's position. Plaintiff has also produced a written memorandum sent to her from defendant's personnel director assuring plaintiff that there were to be no more staff reductions as a result of the operations study. There is also evidence that employees had received verbal assurances that there would be no more layoffs as a result of the study before plaintiff's termination. This evidence casts some doubt on defendant's proffered justification for her termination.[2] *See Durham v. Xerox Corp.*, 18 F.3d 836, 839 (10th Cir.1994) ("Although a prima facie case combined with disproof of the employer's explanations does not prove intentional discrimination as a matter of law, it may permit the factfinder to infer intentional discrimination, and thus preclude summary judgment for the employer.") (citing *St. Mary's Honor Ctr.*, —— U.S. at ——, ——, 113 S.Ct. at 2749, 2751–52).

In addition, plaintiff has produced evidence that the individual responsible for the decision to terminate her, Mr. Bell, made certain statements which may reasonably be interpreted as evidence of a personal bias toward women with children in the workplace. There is evidence that Mr. Bell specifically expressed to plaintiff that he had doubts regarding the likelihood that women who give birth to a second child return to work

---

2. The court does not find that this evidence, in and of itself, is sufficient evidence from which a jury could infer that defendant's proffered reasons are a mere pretext for discrimination, but rather views this evidence in conjunction with other evidence presented by plaintiff.

and that he expressed to other female employees that he believed women were better workers before having children. There is also evidence that Mr. Bell spoke with plaintiff regarding motherhood and expressed that she might consider "motherhood a little bit stronger" and "could always come back to the work force later on," for these were "important years to [plaintiff's] children." [3]

█ While as previously stated, this is far from direct evidence of discrimination, the court does believe it is some evidence, which a reasonable jury might credit, that gender played a role in the decision to eliminate plaintiff's position. The court is mindful that "[i]solated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions." *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir.1994); *see also Heim v. State of Utah*, 8 F.3d 1541, 1547 (10th Cir.1993) (stray remarks in the workplace cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria). However, the remarks allegedly made here were not "isolated," nor were they completely unrelated to the challenged action.

█ In order for the remarks to be sufficiently probative of a discriminatory intent, "plaintiff must demonstrate a nexus between the allegedly discriminatory statements and the defendant's decision to terminate her." *Rea*, 29 F.3d at 1457. Plaintiff has done so here. The alleged remarks were directed specifically at the plaintiff and another female employee returning from maternity leave. They were made by the same individual who ordered the challenged action and they were made close in time to the plaintiff's termination. *See id.* (a causal nexus can be shown if the allegedly discriminatory comments were directed at the plaintiff or her position). In restructuring the company, Mr. Bell was faced with choosing among many qualified people. It is not implausible that when attempting to choose among vice presidents his alleged beliefs about the ability and reliability of women with children affected or motivated his decision to terminate plaintiff.[4]

█ Defendant argues that plaintiff cannot, and has not, met her burden to produce evidence indicating that U.S. Central's explanation for her termination is a pretext for unlawful gender discrimination because Mr. Bell, the individual who eliminated her position, is the same individual who promoted plaintiff to a full vice president position, nine months before her termination, while she was pregnant with her second child. Defendant cites an abundance of case law finding that when the individual responsible for the alleged discriminatory act is the same individual who hired or promoted plaintiff, there is insufficient evidence of discriminatory intent. *See Tyndall v. Nat'l Educ. Ctrs.*, 31 F.3d 209, 214–15 (4th Cir.1994); *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1318 (4th Cir.1993); *LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 847 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994); *Lowe v. J.B. Hunt Transport, Inc.*, 963 F.2d 173, 174 (8th Cir.1992); *Proud v. Stone*, 945 F.2d 796, 797–98 (4th Cir.1991); *McKinsey v. Sentry Ins.*, No. 90–2387–Z, 1992 WL 101686,

---

**3.** The court does not suggest that these comments are per se discriminatory. They may well, in fact, have been sincerely made in an attempt to counsel plaintiff and to encourage her to consider returning to work if she did choose to leave for child rearing. However, the court cannot conclude on a paper record, for summary judgment purposes, that they could not give rise to an inference of discrimination that, when making an adverse job decision, the decision maker took the opportunity to act on his gender-based beliefs. What to make of these comments must be left for trial.

**4.** The court believes it helpful to mention why it believes this case distinguishable from, admittedly, a very similar case, *Swanson v. Allied–Signal, Inc.*, No. 91–2155–L, 1992 WL 223768 (D.Kan.

Aug. 13, 1992), in which this court granted summary judgment in favor of the employer. Of particular importance is the nature of the comments allegedly made by the employer/decision maker in both cases. In *Swanson*, the comments of plaintiff's supervisor, although derogatory, were reflective of gender-neutral stereotypes or characterizations (for instance plaintiff's supervisor called her a "dictator" and accused her of being authoritarian). In addition, other comments relied upon by plaintiff as evidence of pretext came not from her supervisor, but from other employees. By contrast, Mr. Bell's statements are clearly gender specific and he alone had discretion to determine what positions remained available at U.S. Central.

at *3–4 (D.Kan. Apr. 23, 1992), *aff'd,* 986 F.2d 401 (10th Cir.1993).

 The court has read and considered all of these cases. It is indisputable that the fact that Mr. Bell promoted and fired plaintiff severely undercuts her claim that she was discriminated against. However, the court does not agree with defendant that this fact makes her claim irrational in light of other evidence presented. Considering the evidence as a whole, the court believes there to be sufficient evidence from which a reasonable jury could conclude that gender played a role in the decision to terminate plaintiff.[5] Giving plaintiff the benefit of all reasonable inferences flowing from the evidence presented, to which she is entitled upon a motion for summary judgment, the court is compelled to find in her favor. The court cannot conclude, as a matter of law, that there is an absence of evidence in support of plaintiff's claim.

 The final issue before the court pertains to plaintiff's alleged failure to mitigate damages as required by Title VII. Defendant takes the position that plaintiff is not entitled, as a matter of law, to any form of back pay, front pay or other economic damages because of her failure to mitigate her damages.

 As defendant aptly points out, successful Title VII claimants have a duty to exercise reasonable diligence in seeking other employment in an effort to mitigate their damages. *E.E.O.C. v. Sandia Corp.,* 639 F.2d 600, 627 (10th Cir.1980). The burden of proof is on the employer to show that the plaintiff did not exercise reasonable diligence. *Spulak v. K Mart Corp.,* 894 F.2d 1150, 1158 (10th Cir.1990). To meet this burden of proof "the defendant must establish (1) that the damage suffered by plaintiff could have been avoided, i.e. that there were

suitable positions available which plaintiff could have discovered and for which [she] was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such a position." *Id.*

Issues of fact preclude the court from finding, at this stage of the proceedings, that should plaintiff prevail on her claim of gender discrimination, she is barred from receiving any form of back pay, front pay or other economic damages. While the evidence is slim that plaintiff took affirmative action to find substantially equivalent employment, the court declines to find that her efforts were, as a matter of law, unreasonable. If circumstances so warrant, however, this matter may be revisited at trial upon a motion pursuant to Federal Rule of Civil Procedure 50. The court can then view all the evidence presented in proper context.

*Conclusion*

**IT IS THEREFORE ORDERED BY THE COURT** that the motion of defendant U.S. Central Credit Union, for summary judgment (Doc. # 56) is denied.

**IT IS SO ORDERED.**

---

**5.** The defendant also points to the fact that nine male employees in positions comparable to that of plaintiff were terminated during plaintiff's tenure. While this is certainly relevant evidence, its probative value is somewhat diminished by the fact that plaintiff was the only female vice president with the company. Thus, to say other males were terminated is not terribly helpful when plaintiff was the only female who could be terminated. *See Pitre v. Western Elec. Co., Inc.,* 843 F.2d 1262, 1272 (10th Cir.1988) (A showing that some similarly-situated males were demoted at the same time as plaintiff, does not preclude a finding of a statutory violation. "[A]n employer is not immunized from liability simply because some males received detriments before or contemporaneously with a Title VII plaintiff. . . ."). In addition, these terminations occurred over a period of several years. Mr. Bell terminated three male employees several months before he eliminated plaintiff's position.