**Richard A. LONG, Sr., Plaintiff,**

v.

**CITY OF LEAWOOD, KANSAS, Defendant.**

**No. 97–2249–JWL.**

United States District Court, D. Kansas.

May 21, 1998.

Steve A. Matalone, II, Matalone & O'Connor, Christopher R. Williams, Scarritt Arcade, Kansas City, MO, for Plaintiff.

Rebecca S. Yocum, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Overland Park, KS, Richard S. Wetzler, Patricia A. Bennett, Holman, Hansen & Colville, P.C., Prairie Village, KS, for Defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Richard A. Long filed suit against the City of Leawood alleging violations of the Americans with Disabilities Act (ADA) and the Age Discrimination in Employment Act

(ADEA) arising out of his employment with defendant. This matter is presently before the court on defendant's motion for summary judgment (Doc. # 50). For the reasons set forth below, defendant's motion is granted and plaintiff's case is dismissed in its entirety.

## I.  Facts [1]

Plaintiff Richard A. Long began his employment with the City of Leawood in 1985. At the times relevant to this lawsuit, plaintiff worked in the Public Works Department, Asphalt Division, as a Maintenance Worker (Level II). Plaintiff's job duties included, *inter alia*, driving pickup trucks and dump trucks; operating small tools and equipment (*e.g.*, jackhammers, compactors, rollers, saws); and performing manual labor with shovels, brooms, pitchforks and rakes.

In October 1995, plaintiff suffered a work-related injury to his right hand. As a result of this injury, plaintiff is unable to completely grip with the two lateral fingers of his right hand. In January 1996, after having surgery on his hand, plaintiff was released to return to work with certain restrictions. Two months later, plaintiff received a full release with no restrictions and was adequately performing his job duties.

On May 23, 1996, plaintiff was operating a loader when he backed the loader into a material storage building, pulling the wall of the building from its foundation. As a result of the loader accident, plaintiff was required to submit to a post-accident drug test pursuant to City policy. Plaintiff tested positive for an opiate, a prohibited drug under the City's drug policy, because he had taken Tylenol 3 the previous night. Defendant's drug policy requires an employee to report the use of any medication that might affect the employee's ability to safely perform his or her job or utilize equipment. Despite his knowledge of this provision of the City's drug policy, plaintiff failed to notify his supervisor, or any other supervisor, that he had taken Tylenol 3 the night before his shift.

After receiving the results of plaintiff's drug test, plaintiff's supervisor, Dominick Stasi, decided to terminate plaintiff's employment. According to defendant, the reasons for plaintiff's termination included his violation of the City's drug policy, his involvement in a high number of accidents during the course of his employment with defendant,[2] and his poor attendance record. At the time of his termination, plaintiff was fifty-two years old and the oldest Maintenance Worker Level II employed by defendant.

## II.  Summary Judgment Standard

When considering a motion for summary judgment, the court must examine all of the evidence in the light most favorable to the nonmoving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir.1995). A moving party that also bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 536 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. Summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of ev-

---

1.  In accordance with the applicable summary judgment standard, the facts are uncontroverted or related in the light most favorable to plaintiff.

2.  Plaintiff concedes that he was involved in approximately twenty accidents over the course of his employment with defendant, although he contends that he was not at fault for some of the accidents.

ery action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Disability Discrimination

Plaintiff alleges that defendant discriminated against him on the basis of both an actual disability and a perceived disability (*i.e.,* his injured right hand). As set forth in more detail below, the court concludes that plaintiff does not have a "disability" within the meaning of the ADA and, accordingly, grants defendant's motion for summary judgment on plaintiff's ADA claim.

The ADA prohibits a covered entity from discriminating against a "qualified individual with a disability" because of the individual's disability with respect to terms, conditions, and privileges of employment. *See* 42 U.S.C. § 12112(a). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Sutton v. United Air Lines, Inc.,* 130 F.3d 893, 897 (10th Cir.1997); *Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1123 (10th Cir. 1995) (quoting *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995) (quoting 42 U.S.C. § 12111(8))).

▮ Thus, to establish a claim under the ADA, plaintiff must demonstrate that: (1) he is disabled within the meaning of the ADA; (2) he is qualified, that is, with or without reasonable accommodation (which he must describe), he is able to perform the essential functions of the job; and (3) that defendant terminated his employment because of his disability. *See Sutton,* 130 F.3d at 897 (citing *Siemon v. AT&T Corp.,* 117 F.3d 1173, 1175 (10th Cir.1997); *White,* 45 F.3d at 360–61); *MacDonald v. Delta Air Lines, Inc.,* 94 F.3d 1437, 1443 (10th Cir.1996). As set forth below, plaintiff has not produced sufficient

evidence with respect to the first element of his prima facie case.

▮ Under the ADA, a "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *Sutton,* 130 F.3d at 897 (quoting 42 U.S.C. § 12102(2)). Plaintiff relies upon subsections (A) and (C) of § 12102(2) in an effort to establish that he is disabled under the ADA. Specifically, he alleges that the injury to his right hand is a physical impairment that substantially limits his ability to perform manual tasks and limits his ability to perform "some of his job duties." Alternatively, plaintiff maintains that defendant regarded him as having a disability because plaintiff's foreman referred to him as a "one-armed man." The court will address each of plaintiff's arguments in turn.[3]

### 1. Actual Disability

▮ As set forth above, Plaintiff alleges that defendant discriminated against him on the basis of an actual disability—his right hand injury. To avail himself of the benefits of the ADA under this theory, plaintiff must demonstrate that this injury "substantially limits one or more of [his] major life activities." *See* 42 U.S.C. § 12102(2)(A).[4]

The ADA does not define either "substantially limits" or "major life activity." According to the regulations implementing the ADA, "major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Sutton v. United Air Lines, Inc.,* 130 F.3d 893, 900 (10th Cir.1997) (quoting 29 C.F.R. § 1630.2(i)). *See also MacDonald v. Delta*

---

**3.** In his papers, plaintiff also suggests that the ten percent permanent partial disability rating assigned to his right hand for purposes of his workers' compensation claim constitutes a "record" of a substantially limiting impairment pursuant to 42 U.S.C. § 12102(2)(B). Plaintiff did not assert this theory of liability in the pretrial order. Accordingly, any claim based on an alleged "record" of a disability is deemed waived and the court will not address it. *See Tyler v. City of Manhattan,* 118 F.3d 1400, 1403 (10th

Cir.1997); *Zinn v. McKune,* 949 F.Supp. 1530, 1534 (D.Kan.1996), *aff'd,* 143 F.3d 1353 (10th Cir.1998).

**4.** The court will assume, without deciding, that Plaintiff's injury constitutes a "physical impairment" within the meaning of the ADA. *See* 29 C.F.R. § 1630.2(h)(1) (defining "physical impairment"); *Sutton v. United Air Lines, Inc.,* 130 F.3d 893, 898–99 (10th Cir.1997) (discussing same).

*Air Lines, Inc.,* 94 F.3d 1437, 1444 (10th Cir.1996) (adopting definition in 29 C.F.R. § 1630.2(i)). Other activities such as sitting, standing, lifting and reaching may be considered "major life activities." *Lowe v. Angelo's Italian Foods, Inc.,* 87 F.3d 1170, 1173 (10th Cir.1996) (citing 29 C.F.R. § 1630.2(i)). In order for an impairment to be considered "substantially limiting," the individual must be

(i) unable to perform a major life activity that the average person in the general population can perform; or

(ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

*Sutton,* 130 F.3d at 900 (quoting 29 C.F.R. § 1630.2(j)(1)).

■ The court has found no evidence in the record that plaintiff's injured right hand substantially limited any of his major life activities. According to plaintiff, the injury substantially limited his ability to perform manual tasks. In support of this theory, plaintiff asserts only that he cannot pick up a five-pound bag of sugar with his right hand. Such evidence is woefully inadequate to demonstrate a "substantial limitation" in plaintiff's ability to "perform manual tasks." Specifically, plaintiff has not offered any evidence for a reasonable factfinder to conclude that he is significantly restricted in his ability to perform manual tasks as compared to the average person in the general population. *See* 29 C.F.R. § 1630.2(j)(1). In the absence of such evidence, the court is unwilling to conclude that plaintiff's inability to pick up a five-pound bag of sugar with his right hand

renders him "disabled" within the meaning of the ADA.[5]

Plaintiff also claims that his injured right hand "prevented him from performing some of his job duties." The court assumes, then, that plaintiff's theory is that his injured right hand substantially limited his ability to work. In support of this theory, however, plaintiff alleges only that he was unable to operate a floor buffer in the custodial position he held subsequent to his employment with defendant. Again, such evidence fails to demonstrate that plaintiff's injury substantially limited his ability to work.

■ To demonstrate that an impairment substantially limits the major life activity of working, an individual must show a significant restriction in the "ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Bolton v. Scrivner, Inc.,* 36 F.3d 939, 942 (10th Cir.1994) (quoting 29 C.F.R. § 1630.2(j)(3)(i)). It is well settled that the "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *See, e.g., Sutton,* 130 F.3d at 904 (quoting 29 C.F.R. § 1630.2(j)(3)(i)).

Significantly, plaintiff has not submitted any evidence for a reasonable factfinder to conclude that his injured right hand significantly restricted his ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. In fact, plaintiff testified that, at the time of his discharge, he was performing all of his job duties "reasonably well." Moreover, subsequent to his termination, plaintiff applied for various jobs involving general maintenance, lawn maintenance, janitorial

---

5. *In his papers, plaintiff asks the court to take judicial notice that plaintiff's job duties as a maintenance worker for defendant would require repetitive grasping and lifting with both hands. The court declines plaintiff's invitation to "judicially notice" a key element of plaintiff's prima facie case. In any event, such "facts" are not the kinds of facts contemplated by Federal Rule of Evidence 201. See Fed.R.Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) general-*

*ly known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").*

*Moreover, even if the court assumed that plaintiff's job duties required repetitive grasping and lifting, the record is devoid of any evidence suggesting that plaintiff was substantially limited in his ability to grasp (although the court seriously questions whether grasping would constitute a major life activity) or lift.*

work, service station work and driving and delivery work. Plaintiff testified that he believed he could perform the job duties of each position for which he applied.

■ In light of plaintiff's testimony, and in the absence of any evidence suggesting otherwise, the court concludes that plaintiff does not have a "disability" within the meaning of subsection (A) of § 12102(2). Accordingly, the court grants defendant's motion for summary judgment with respect to plaintiff's discrimination claim to the extent his claim is based on an actual disability.[6]

### 2. "Regarded As" Disabled

■ Plaintiff also contends that defendant "regarded" him as having a disability, *see* 42 U.S.C. § 12102(2)(C), because his foreman, Walter Huff, referred to him as a "one-armed man." The regulations implementing the ADA explain that a person is "regarded as" having an impairment that substantially limits a major life activity if he

(1) has a physical or mental impairment that does not substantially limit major life activities but *is treated* . . . as constituting such limitation;

(2) has a physical or mental impairment that substantially limits major life activities only *as a result of the attitudes* of others toward such impairment; or

(3) has none of the impairments defined [in the regulations] but is treated . . . as having a substantially limiting impairment.

*MacDonald v. Delta Air Lines, Inc.*, 94 F.3d 1437, 1444 (10th Cir.1996) (quoting and adopting 29 C.F.R. § 1630.2(*l*)(1)-(3)). *See also Sutton v. United Air Lines, Inc.*, 130 F.3d 893, 903 (10th Cir.1997) (same). Thus,

" 'a person is "regarded as having" an impairment that substantially limits the person's major life activities when other people treat the person as having a substantially limiting impairment,' regardless of whether the individual actually has an impairment." *Sutton*, 130 F.3d. at 903 (quoting *MacDonald*, 94 F.3d at 1444 (quoting *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir. 1995))). In essence, the "focus is on the impairment's or the perceived impairment's effect upon the attitudes of others." *Id.*

Construing the facts in a light most favorable to plaintiff, the court concludes that plaintiff has not produced evidence from which a reasonable factfinder could conclude that defendant regarded plaintiff's injured right hand as substantially limiting any of his major life activities. In fact, plaintiff does not even suggest that defendant regarded his right hand injury as substantially limiting any of his major life activities. Because plaintiff fails to articulate any theory with respect to which major life activity defendant regarded as substantially limited, the court assumes that plaintiff is claiming that defendant regarded his injured right hand as substantially limiting his ability to work.

■ In order to establish a "disability" under the "regarded as" prong of the ADA with respect to the major life activity of working, plaintiff must establish that defendant regarded him as substantially limited in his ability to perform either a class of jobs or a broad range of jobs. *Sutton*, 130 F.3d at 904; *MacDonald*, 94 F.3d at 1445. Plaintiff cannot make this showing.

Moreover, a "concession" that an individual has a particular disability rating for purposes of the workers' compensation scheme is not necessarily inconsistent with an argument that the individual does not have a "disability" within the meaning of the ADA in light of the fundamental differences between the two statutory schemes. *See id.* at 1330–32 (focusing on the "fundamental differences" between the Social Security Act and the ADA in rejecting the "judicial estoppel" theory). *See also Bolton v. Scrivner, Inc.*, 36 F.3d 939, 944 (10th Cir.1994) (affirming summary judgment on plaintiff's ADA claim despite workers' compensation disability rating where disability rating "does little to show that [plaintiff] is restricted from performing a class of jobs" within the meaning of the ADA).

**6.** Plaintiff's primary argument with respect to his ADA claim seems to be that defendant is estopped from arguing that plaintiff is not disabled because the parties settled plaintiff's workers' compensation claim at a fifteen percent permanent partial disability rating. According to plaintiff, the arguments set forth in defendant's papers are "inconsistent" with the workers' compensation settlement. The court is not persuaded. In fact, the Tenth Circuit has recently rejected this "judicial estoppel" theory, albeit in the converse situation. *See Rascon v. U S West Communications, Inc.*, 143 F.3d at 1332 (10th Cir.1998) (holding that statements made in connection with a plaintiff's application for social security benefits cannot be an automatic bar to a disability discrimination claim under the ADA).

Mr. Huff's conduct, while perhaps insensitive, falls far short of establishing (and plaintiff does not even allege) that defendant "regarded" plaintiff as substantially limited in his ability to perform a class of jobs or a broad range of jobs. In fact, plaintiff does not even allege that defendant regarded him as incapable of performing his duties as a maintenance worker for defendant. Viewing the evidence in the light most favorable to plaintiff, he can establish only that Mr. Huff was perhaps insensitive to plaintiff's condition. This evidence fails to establish that plaintiff was disabled under the "regarded as" definition found at § 12102(2)(C). Thus, defendant's motion for summary judgment is granted with respect to plaintiff's "regarded as" claim.[7]

## IV. Age Discrimination

Plaintiff also contends that defendant's decision to terminate his employment violated the Age Discrimination in Employment Act (ADEA). The court analyzes plaintiff's ADEA claim under the familiar burden-shifting framework first pronounced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 327 (10th Cir.1996). In the summary judgment context, plaintiff initially must raise a genuine issue of material fact on each element of his prima facie case of discrimination. *See id.*

Once plaintiff establishes his prima facie case, the burden shifts to defendant to offer a legitimate, nondiscriminatory reason for its employment decision. *Id.* (citing *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)). If the defendant comes forward with a nondiscriminatory reason for its actions, the burden then reverts to the plaintiff "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is

pretextual—i.e., unworthy of belief." *Id.* (quoting *Randle*, 69 F.3d at 451). If the plaintiff proffers such evidence, the motion for summary judgment must be denied. *Id.* (quoting *Randle*, 69 F.3d at 452 n. 17).

[██] To establish a prima facie case of age discrimination, plaintiff must demonstrate that (1) he was a member of the protected age group at the time of the discharge; (2) he was doing satisfactory work; (3) he was discharged; and (4) his position was filled by a younger person. *Smith v. Midland Brake, Inc.*, 138 F.3d 1304, 1312 (10th Cir.1998) (citing *Gonzagowski v. Widnall*, 115 F.3d 744, 749 (10th Cir.1997)).[8] Defendant maintains that plaintiff has failed to set forth sufficient evidence with respect to the second element of his prima facie case. As set forth below, the court disagrees.

[██] According to defendant, plaintiff cannot produce sufficient evidence that he was doing satisfactory work at the time his employment was terminated. In support of this argument, defendant highlights plaintiff's attendance problems and the high number of accidents in which Plaintiff was involved during his employment with defendant. Defendant also emphasizes the loader accident on May 23, 1996. The court concludes, however, that there is sufficient evidence in the record to create a genuine issue of material fact as to whether plaintiff was doing satisfactory work. In March 1996, for example, two months before plaintiff's termination, Walter Huff completed a performance evaluation of plaintiff. In all but one category, plaintiff received a "satisfactory" or "commendable" rating.[9] *See MacDonald v. Delta Air Lines, Inc.*, 94 F.3d 1437, 1441 (10th Cir.1996) (genuine issue of material fact existed as to whether plaintiff was a satisfactory air mechanic for purposes of establishing prima facie case of age discrimination where record evidence included performance evaluation completed

---

**7.** In any event, it is uncontroverted that Mr. Huff was not involved in the decision to terminate plaintiff's employment. Moreover, there is no evidence in the record that plaintiff complained to defendant about Mr. Huff's comments or that defendant shared Mr. Huff's sentiments in any way.

**8.** In reduction-in-force cases, the fourth element of the prima facie case is satisfied by showing

that the plaintiff was treated less favorably than younger employees. *See Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir.1995) (citing *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1454 (10th Cir.1994)).

**9.** Plaintiff received a "needs improvement" rating with respect to safe work practices.

four months prior to termination giving plaintiff a "standard" rating in all categories). Moreover, the evaluation is replete with positive comments from Mr. Huff, including that plaintiff "carries out his work assignments to the best of his abilities," "willingly does whatever task he is asked to do," and "adheres to his assigned work schedule, reports for work on time and has properly utilized time while at work." Such evidence is sufficient to create a genuine issue of material fact with respect to the second element of plaintiff's prima facie case.[10]

■■■ Although Plaintiff has set forth sufficient evidence with respect to his prima facie case of age discrimination, he has failed to raise any inference of pretext. Defendant has articulated four specific legitimate, non-discriminatory reasons for terminating plaintiff's employment: (1) the loader accident and subsequent positive drug screen; (2) plaintiff's violation of defendant's drug policy; (3) the high number of accidents in which plaintiff was involved during the course of his employment with defendant; and (4) his chronic attendance problems.

Significantly, plaintiff does not challenge defendant's decision to terminate his employment because of the loader accident and subsequent positive drug screen. Rather, plaintiff questions the additional reasons given by defendant for plaintiff's termination when, after the loader accident, defendant reviewed plaintiff's work history as a part of its overall evaluation of plaintiff's fitness for continued employment.

In an effort to demonstrate that the second reason offered by defendant is pretextual, plaintiff alleges that defendant retained two other individuals, Ron Hunke and Ron Newcomb, after they tested positive for drugs.

This contention, without more, is of little legal significance. The record is devoid of any evidence that Mr. Hunke or Mr. Newcomb were similarly situated to plaintiff or that these individuals were younger than plaintiff. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir.1997) ("Similarly situated employees are those who deal with the same supervisor and are subject to the same standard governing performance evaluation and discipline."); *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir.1997) ("A satisfactory showing that similarly situated employees, who do not belong to the protected class, were treated differently with regard to violation of a work rule could have lent support to the pretext argument."). Without such evidence, the mere fact that Mr. Hunke and Mr. Newcomb were retained despite testing positive for drugs is insufficient to suggest that defendant's proffered explanation for plaintiff's termination is pretextual.

Plaintiff also urges that he, in fact, complied with defendant's drug policy. Specifically, plaintiff claims that he reported his use of Tylenol 3 to his supervisor prior to May 23, 1996. The record, however, only indicates that plaintiff and Mr. Stasi had a conversation about plaintiff's use of medication in January 1996—immediately following plaintiff's hand surgery and while plaintiff was still on medical leave. There is no evidence (and plaintiff does not allege) that plaintiff and Mr. Stasi discussed plaintiff's use of any medications at any other time. This conversation is simply not sufficient to put defendant on notice that plaintiff was taking prescription medication in May 1996. In other words, although plaintiff may believe that he complied with the policy by "reporting" his prescription drug use in January 1996 while he was still on medical leave, the policy contemplates an employee report-

---

10. Although defendant also argues that plaintiff has failed to offer any evidence that he was replaced by a younger person, defendant raised the issue for the first time in its reply brief. The court will not address this argument because it does not believe plaintiff has had a fair opportunity to direct the court to evidence supporting the fourth element of his prima facie case. *See Thurston v. Page*, 931 F.Supp. 765, 768 (D.Kan. 1996) ("The court will not consider the new argument ... presented in defendant's reply brief when that issue was not raised in the initial motion for summary judgment.") (citing *Glad v.*

*Thomas County Nat'l Bank*, No. 87–1299–C, 1990 WL 171068 (D.Kan. Oct.10, 1990) (court will not consider new arguments and issues presented in a reply brief because plaintiff has not had an opportunity to respond)); *Mike v. Dymon, Inc.*, No. 95–2405–EEO, 1996 WL 427761, at *2 (D.Kan. July 25, 1996) ("In pursuit of fairness and proper notice, the court generally summarily denies or excludes all arguments and issues first raised in reply briefs.") (internal quotations omitted) (quoting *Wagher v. Guy's Foods, Inc.*, 765 F.Supp. 667, 671 (D.Kan.1991)).

ing such use immediately prior to starting his or her shift. It is uncontroverted that plaintiff knew about this requirement and yet did not report his use of Tylenol 3 prior to starting his shift on May 23, 1996. In such circumstances, it was reasonable for defendant to conclude that plaintiff had not complied with its drug policy.

In further support of his argument that he complied with defendant's drug policy, plaintiff maintains that he did not take any medication during working hours. There is no evidence, however, that defendant's drug policy prohibited the use of drugs only during working hours. Rather, the policy required employees to report the use of any medication, regardless of whether the medication is taken during working hours, that might affect the employee's ability to safely perform his or her job. Finally, plaintiff claims that he did not know that taking Tylenol 3 could impair his ability to perform his job. Even assuming plaintiff did not know of the potential effects of the medication, this fact fails to demonstrate that defendant's conclusion that plaintiff had violated the drug policy is unworthy of credence or that plaintiff's age was a factor in defendant's decision to terminate his employment. *Cf. Corneveaux v. Cuna Mutual Ins. Group*, 76 F.3d 1498, 1504 (10th Cir.1996) (sufficient showing of pretext where plaintiff introduced *contradictory* evidence for each of defendant's five proffered reasons for its employment action).[11]

Similarly, plaintiff has failed to set forth any evidence of pretext with respect to defendant's assertion that the decision to terminate plaintiff's employment was based in part on the number of accidents in which plaintiff was involved. In response to defendant's explanation, plaintiff asserts that accidents are "bound to happen" and are simply "part of being a maintenance worker." Moreover, plaintiff claims that he, as a long-term employee, would naturally be involved in more accidents than employees who had worked fewer years. Finally, plaintiff claims that defendant disparately disciplined employees involved in accidents depending on whether the employee was a member of the "in" group or the "out" group. Even assuming these allegations are true, such "evidence" does not demonstrate that defendant's proffered explanation is a pretext for age discrimination.[12]

With respect to his attendance problems, plaintiff concedes that his attendance record was poor and admits that he was counseled numerous times with respect to his attendance record. In fact, plaintiff admits that he was placed on probation several times as a result of his attendance problems. Simply put, particularly in light of the context of defendant's decision to terminate plaintiff's employment, there is no evidence in the record that this proffered reason is a pretext for age discrimination.[13]

11. Although his argument is somewhat unclear, plaintiff also appears to suggest that defendant's proffered reason is pretextual because defendant allowed plaintiff to drive himself to the drug-testing site after his May 23, 1996 accident. According to plaintiff, this fact indicates that defendant did not consider plaintiff impaired in any way on the day of the accident. Plaintiff, however, had not disclosed to defendant that he had taken the potentially dangerous medication. Moreover, defendant's drug policy required that employees take a drug test after any accident resulting in damage or injury. Thus, it remains uncontroverted that plaintiff failed to report his use of Tylenol 3 prior to beginning his shift, had a serious on-the-job accident, and subsequently tested positive for a prohibited substance. In such circumstances, whether defendant perceived plaintiff as impaired immediately following the accident is not material to a determination of whether defendant's proffered reasons for plaintiff's termination—plaintiff's accident and positive drug test—were pretextual.

12. Plaintiff also contends that defendant's "inconsistent" statements with respect to the number of accidents indicates that this proffered reason is pretextual. In response to an interrogatory, defendant stated that plaintiff was involved in "twenty plus preventable accidents." According to plaintiff, however, Dominick Stasi could not specifically recall the number of accidents in which plaintiff was involved. The court finds no merit in this argument. A review of Mr. Stasi's deposition testimony reveals that Mr. Stasi estimated the number of accidents as "close to 20."

13. In an effort to show that his attendance record is a pretext for discrimination, plaintiff argues that he was absent for legitimate reasons (*e.g.*, sick leave and vacation time). Although there may be a factual issue with respect to whether plaintiff's absences were excused or unexcused, the court does not believe that this is a material fact for purposes of resolving defendant's summary judgment motion. This is par-

Finally, plaintiff directs the court to alleged ageist comments made by Walter Huff, plaintiff's foreman, in an effort to demonstrate that age was a determining factor in defendant's decision to terminate his employment. Specifically, plaintiff claims that Mr. Huff referred to him as an "old man" on a daily basis. These comments are insufficient to demonstrate pretext. *See Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 531 (10th Cir.1994) (stray remarks, unrelated to the challenged action, are "insufficient to create a jury issue in an ADEA case"). Plaintiff has failed to demonstrate any connection between these alleged comments and his termination. *See Bolton v. Scrivner, Inc.,* 36 F.3d 939, 944 (10th Cir.1994) (comments by plaintiff's supervisor that plaintiff was an "old fart" does not show pretext because plaintiff failed to demonstrate a nexus between those comments and defendant's decision not to rehire him); *Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1457 (10th Cir.1994) (no showing of pretext where plaintiff failed to demonstrate a causal nexus between alleged ageist remarks and her layoff). Specifically, there is simply no evidence in the record that Walter Huff participated in the decision to terminate plaintiff's employment. *Compare Cone,* 14 F.3d at 531 ("[A]ge-related comments by non-decisionmakers are not material in showing the [defendant's] action was based on age discrimination.") *with Eslinger v. U.S. Central Credit Union,* 866 F.Supp. 491, 498 (D.Kan.1994) (sufficient showing of discriminatory intent where alleged remarks were made by the same individual who ordered the challenged employment action). In the absence of this nexus, the comments are insufficient to show that defendant's proffered reasons for terminating plaintiff's employment were pretextual.

In short, there is simply no evidence in the record to suggest that defendant's proffered reasons for terminating plaintiff's employment were unworthy of belief or that

plaintiff's age played any part in defendant's decision to terminate his employment. Accordingly, the court grants defendant's motion for summary judgment on plaintiff's age discrimination claim.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (Doc. # 50) is granted. Plaintiff's case is dismissed in its entirety.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant's motion to dismiss plaintiff's complaint or, in the alternative, to reserve defendant's right to object to plaintiff's 26(a)(3) disclosures (doc. # 58) is denied as moot.

**IT IS SO ORDERED.**

---

ticularly true given the context of defendant's decision to terminate plaintiff's employment. Defendant reviewed plaintiff's work history, including his attendance, only after plaintiff's May 23, 1996 accident—the event which triggered plaintiff's discharge—as a part of its overall evaluation of plaintiff's fitness for continued employment. Although an inference of pretext might arise if an employee's disputed absences alone were the proffered reasons for termination, no such inference arises where a history of absences (excused or otherwise) is part of an overall evaluation of the employee following an occurrence giving rise to an independent, precipitating, non-discriminatory reason for plaintiff's discharge. In these circumstances, the court concludes that plaintiff has failed to call into question defendant's reasons for terminating his employment.